IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE ) | No. 09 B 44945 |
| ROMEO IUSCO and MONICA IUSCO ) ) | Chapter 11 |
| Debtor. ) ) | Judge Pamela S. Hollis |

## US BANK N.A.'S RESPONSE TO DEBTORS' MOTION TO COMPEL AND MOTION TO AUTHORIZE EXCLUSION OF RECEIVER FROM TURNOVER OF PROPERTY PURSUANT TO 11 USC § 543(d)(1)

U.S. BANK NATIONAL ASSOCIATION, a national banking association, as successor in interest to the Federal Deposit Insurance Corporation, Receiver for Park National Bank ("US Bank"), a secured creditor in the captioned Chapter 11 case, by its attorneys, CHUHAK & TECSON, P.C., for its response to Debtors' Motion to Compel requests that this Court deny the Motion and enter an order excusing the Receiver's of compliance with sections 543(a), (b) and (c) of the Bankruptcy Code. In support of thereof, US Bank states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G) and (O). Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

### PARTIES AND BACKGROUND

2. On November 5, 2009, Romeo and Monica Iusco (the "Debtors") filed for relief under Chapter 11 of the United States Bankruptcy Code.

3. US Bank is a secured creditor of the Debtors by virtue of four commercial mortgage loans, a residential mortgage loan and a vehicle loan made to the Debtors. To the

extent that the Debtors' Motion to Compel is limited to Debtors' commercial properties, this pleading does not address the residential or vehicle loans. The commercial loans are identified below.

### I.   3001 N. Spaulding Ave., Chicago, IL 60618

4.   On December 2, 2004, US Bank made a commercial loan in the principal amount of $1,576,734.37 evidenced by a corresponding promissory note (the "Senior Spaulding Note") executed in favor of US Bank by debtor Romeo Iusco and secured by a first mortgage (the "Senior Spaulding Mortgage") from debtor Romeo Iusco recorded against real property commonly known as 3001 N. Spaulding Ave., Chicago, IL 60618 (the "Spaulding Property"). The mortgage was recorded with the Cook County Recorder of Deeds on July 8, 2005 as Document No. 0518935471. Copies of the Senior Spaulding Mortgage and the Senior Spaulding Note are attached hereto as Exhibits 1 and 2.

5.   On December 12, 2006, US Bank made a commercial loan in the principal amount of $325,000 evidenced by a corresponding promissory note (the "Junior Spaulding Note") executed in favor of US Bank by debtor Romeo Iusco and secured by a junior mortgage (the "Junior Spaulding Mortgage") from Debtors recorded against the Spaulding Property. The mortgage was recorded with the Cook County Recorder of Deeds on January 9, 2007 as Document No. 0700926293. Copies of the Junior Spaulding Mortgage and the Junior Spaulding Note are attached hereto as Exhibits 3 and 4.

6.   On or about January 16, 2009, the Senior Spaulding Note went into default as a result of non-payment. Likewise, on or about March 1, 2009, the Junior Spaulding Note went into default based on non-payment following its maturity. On March 30, 2009, US Bank initiated a foreclosure suit against the Spaulding Property in the Cook County Circuit Court,

styled <u>Cosmopolitan Bank and Trust n/k/a Park National Bank v. Romeo Iusco, et al.</u>, Case No. 09 CH 14018 (the "Spaulding Foreclosure Action").

7. On July 21, 2009, the Court in the Spaulding Foreclosure Action appointed Mike Zucker of Peak Properties, LLC as receiver (the "Receiver") for the Property. A copy of the Order Appointing Mr. Zucker as receiver is attached hereto as <u>Exhibit</u> 5.

8. On October 7, 2009, the Court in the Spaulding Foreclosure action entered a Judgment of Foreclosure and Sale. A copy of the Judgment of Foreclosure and Sale is attached hereto as <u>Exhibit</u> 6. The Spaulding Property was then scheduled for a judicial sale on November 11, 2009. A copy of the Spaulding Notice of Sale is attached hereto as <u>Exhibit</u> 7.

## II.    <u>4716 W. Shakespeare Ave., Chicago, IL 60639</u>

9. On October 13, 2000, US Bank made a commercial loan in the principal amount of $380,000 evidenced by a corresponding promissory note (the "Shakespeare Note") executed in favor of US Bank by debtor Romeo Iusco and secured by a commercial first mortgage (the "Shakespeare Mortgage") from debtor Romeo Iusco recorded against real property commonly known as 4716 W. Shakespeare Ave., Chicago, IL 60639 (the "Shakespeare Property"). The mortgage was recorded with the Cook County Recorder of Deeds on October 20, 2000 as Document No. 00822510. Copies of the Shakespeare Mortgage and the Shakespeare Note are attached hereto as <u>Exhibits</u> 8 and 9.

10. On or about January 16, 2009, the Shakespeare Note went into default as a result of non-payment. On March 30, 2009, US Bank initiated a foreclosure suit against the Shakespeare Property in the Cook County Circuit Court, styled <u>Cosmopolitan Bank and Trust n/k/a Park National Bank v. Petru Iusco, et al.</u>, Case No. 09 CH 14011 (the "Shakespeare Foreclosure Action").

- 5 -

943445\1\19693\37778

11.  On July 21, 2009, the Court in the Shakespeare Foreclosure Action appointed Mike Zucker of Peak Properties, LLC as receiver (the "Receiver") for the Property. A copy of the Order Appointing Mr. Zucker as receiver is attached hereto as <u>Exhibit</u> 10.

12.  On September 30, 2009, the Court in the Shakespeare Foreclosure action entered a Judgment of Foreclosure and Sale. A copy of the Judgment of Foreclosure and Sale is attached hereto as <u>Exhibit</u> 11. The Shakespeare Property was then scheduled for a judicial sale on November 5, 2009. A copy of the Shakespeare Notice of Sale is attached hereto as <u>Exhibit</u> 12.

### III.  <u>3310 W. Wabansia, Chicago, IL 60647</u>

13.  On September 29, 2000, US Bank made a commercial loan in the principal amount of $248,000 evidenced by a corresponding promissory note (the "Wabansia Note") executed in favor of US Bank by debtor Romeo Iusco and secured by a commercial first mortgage (the "Wabansia Mortgage") from debtor Romeo Iusco recorded against real property commonly known as 3310 W. Wabansia, Chicago, IL 60647 (the "Wabansia Property"). The mortgage was recorded with the Cook County Recorder of Deeds on October 2, 2000 as Document No. 00769543. Copies of the Wabansia Mortgage and the Wabansia Note are attached hereto as <u>Exhibits</u> 13 and 14.

14.  On or about January 16, 2009, the Wabansia Note went into default as a result of non-payment. On March 30, 2009, US Bank initiated a foreclosure suit against the Wabansia Property in the Cook County Circuit Court, styled <u>Cosmopolitan Bank and Trust n/k/a Park National Bank v. Romeo Iusco, et al.</u>, Case No. 09 CH 14023 (the "Wabansia Foreclosure Action").

15.  On July 21, 2009, the Court in the Wabansia Foreclosure Action appointed Mike Zucker of Peak Properties, LLC as receiver (the "Receiver") for the Property. A copy of the

Order Appointing Mr. Zucker as receiver is attached hereto as <u>Exhibit</u> 15.

16. On September 30, 2009, the Court in the Wabansia Foreclosure action entered a Judgment of Foreclosure and Sale. A copy of the Judgment of Foreclosure and Sale is attached hereto as <u>Exhibit</u> 16. The Wabansia Property was then scheduled for a judicial sale on November 5, 2009. A copy of the Wabansia Notice of Sale is attached hereto as <u>Exhibit</u> 17.

### IV.    <u>The Chapter 11 Filing</u>

17. On November 5, 2009, the day the Shakespeare and Wabansia properties were set for judicial sale, the Debtors filed their petition under Chapter 11 of the Bankruptcy Code. Thereafter, on November 24, 2009, the Debtors filed their Motion to Compel petitioned this Court for the turnover of any and all rent payments being held by the Receiver in connection with the Spaulding, Shakespeare and Wabansia properties (collectively the "Properties"). The Motion to Compel provides no indication as to where or how any returned funds would he applied or how they would be used to ever reorganize.

### ARGUMENT

18. Pursuant to Section 543(d)(1) of the Bankruptcy Code, the Court may excuse compliance with subsection (a), (b) or (c) of this section if the interests of the creditors would be better served by permitting a custodian to continue in possession, custody or control of such property. 11 USC § 543(d)(1) (West 2008). Courts view the term "custodian" broadly and have held that a receiver appointed in a state court foreclosure action constituted a "custodian" who could be excused from compliance rules upon a showing that it would be in the best interests of the creditors. *In re Foundry of Barrington Partnership*, 129 B.R. 550, 558 (N.D. Ill. 1991). Factors to be considered when examining the "best interests of the creditors" under Section 543(d) include whether there will be sufficient income to fund a successful reorganization,

whether the debtor will use the turnover property for the benefit of creditors and whether there has been mismanagement by the debtor. *In re Constable Plaza Associates, L.P.*, 125 B.R. 98, 103 (S.D.N.Y. 1991).

19. In the factually similar to the case of *In re Foundry of Barrington Partnership*, the mortgagee filed motions seeking abstention or dismissal of debtor's Chapter 11 case, to excuse the Receiver from surrendering possession of property to the debtor and to prohibit the debtor from using cash collateral. *In re Foundry of Barrington Partnership*, 129 B.R. 550, 558 (N.D. Ill. 1991). In the *Barrington* case, the Court granted the mortgagee's motion and excused the Receiver from its obligations under the Bankruptcy Code under Section 543 finding that the creditors interest would be better served by permitting the custodian to continue in possession. The shopping center was only 50% occupied and the shopping center was worth less than when the debtor purchased it two years ago.

20. In the instant case, the Receiver has been in possession, in control and in charge of the Properties since July 21, 2009. As set forth in the Receivership Orders, the Debtors were directed to turnover to the Receiver certain basic information and documentation concerning the Properties and the Properties' tenants. As noted in the Receiver's Reports, no such information or documentation was ever provided for any of the three buildings despite repeated telephone calls. Likewise, the Debtors never turned over any tenant security deposits as directed in the Receivership Orders. Copies of the Receiver's August 26, 2009, October 13, 2009 and November 20, 2009 Reports for the Spaulding Property, are attached hereto as <u>Exhibits</u> 18-20. Likewise, copies of the Receiver's August 25, 2009, and November 2, 2009 Reports for the Shakespeare Property and September 7, 2009 Report for the Wabansia Property are attached as <u>Exhibits</u> 21-23.

943445\1\19693\37778

21. As set forth in the Receiver's Reports, the Spaulding Property, is a twenty-four unit apartment building that the Receiver has managed from the ground up, going door to door to meet with tenants, secure copies of leases and restore trash hauling service, monthly common area cleaning service, snow removal service and landscaping. The Receiver has also cleaned the entire Property, which was littered with garbage and debris throughout its common areas and porches. The Reports also note substandard repair and rehabilitation work at the Property, specifically that the building's furnaces and air conditioning units had been installed without permits and in violation of City of Chicago Building Code requirements. As a result the Spaulding Property's electrical system which frequently compromised, resulting in ten to twelve "brown outs" or "black outs" between July 21, 2009 and August 26, 2009. The Receiver obtained quotes to repair the electrical system and a contractor was ultimately hired to repair at a cost of $44,000, resulting in ($15,382) net income at the Property for the period July 21, 2009 through October 13, 2009. Of the Spaulding Property's twenty-four units, five are not habitable but all others units, except for two, are currently occupied.

22. As noted in the Receiver's Reports, the Shakespeare Property is a four unit building and the Wabansia Property is a three unit building, both of which have also been managed by the Receiver from the ground up. Again, both the Properties were littered with garbage and debris and were cleaned throughout by the Receiver who also restored trash hauling service, monthly common area cleaning service, snow removal service and landscaping. The Shakespeare Property now requires approximately $26,000 in repairs but are fully rented, and the day to day operations and well being of the tenants are being property addressed.

23. As noted in the Receiver's Reports, the Debtors failed to provide him with any evidence of property insurance and upon information and belief, the Debtors have allowed

943445\1\19693\37778

insurance policies to lapse on each of the three Properties. As such, the Properties are now being insured by US Bank through force placed insurance. Likewise, upon information and belief, real estate taxes remain due and owing on each of the Properties.

24. Pursuant to the Spaulding, Shakespeare and Wabansia Judgments of Foreclosure and Sale, the unpaid amount due and owing to US Bank on the three commercial loans totals $2,685,634.33. The amount currently being held by Receiver pursuant to his Reports totals $24,100.00. As such, any funds turned over to the Debtor would have no impact on any of the Properties, for which US Bank will also be seeking relief from the automatic stay so that it can proceed with its judicial sale of the Properties. In that regard, the Motion to Compel is hardly compelling and fails to sett forth a single significant reason as to why the Properties should be returned to the Debtors who have not made a single loan payment on the Properties for almost one year.

25. In *In re Powers Aero Marine Services, Inc.*, 42 B.R. 540,545 (S.D. Texas 1984) the court noted that the debtor's planned use of the property in a successful reorganization was mere "wishful thinking" that was "unsupported by business evidence" in finding that the custodian was exempt from turnover requirements under §543(d). Similarly, the Debtor has not presented any kind of plan that would result in a successful reorganization. Rather, in its Motion, Debtor claims "that a turnover of the Properties would be beneficial to US Bank because receivership fees would no longer be incurred." Such a statement is absurd considering the history of the loans, the history of the Properties and the fact that no plan has been presented to support such a turnover. The Debtor's argument that the Property can be used in a successful reorganization is nothing more than wishful thinking, and is entirely unsupported by business evidence.

- 10 -

943445\1\19693\37778

26. Accordingly, for the reasons stated above, the Debtor does not have sufficient income to fund a successful reorganization, the Debtor will not use any funds held by the Receiver for the benefit of creditors and the Properties have already been mismanaged by the Debtor. The interests of the creditors would be better served by permitting the Receiver to continue possession, custody and control of the Properties pursuant to Section 543(d)(1) of the Bankruptcy Code.

27. Based on the foregoing reasons, US Bank respectfully requests the Court deny the Debtors' Motion to Compel Turnover and excuse the Receiver's compliance with its obligations under Section 543(a), (b) or (c) and grant such further relief as this Court deems just and proper.

**US BANK NATIONAL ASSOCIATION,**
a national banking association, as
successor in interest to the Federal
Deposit Insurance Corporation, Receiver
for Park National Bank ("US BANK")

By:    /s/Francisco E. Connell
        One of Its Attorneys

Edmond M. Burke (#6276406)
Francisco E. Connell (#6289256)
CHUHAK & TECSON, P.C.
30 South Wacker Drive, 26TH Floor
Chicago, Illinois 60606-7413
(312) 444-9300