IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ROMEO IUSCO and MONICA IUSCO, | ) | |
| | ) | |
| Debtors, | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 09-41945 |
| ALEX JOHNSON, Individually and as a shareholder of MARQUEE BUILDERS, INC. | ) | |
| ALEX JOHNSON, as Assignee of ANAND SHAH, KANTI RAVANI; PHILLIP DESAI and YASHWANT PATEL | ) | |
| MUKESH SHARMA, Individually | ) | |
| ANN MATTHEW, Individually | ) | |
| MITESH PATEL, Individually, | ) | |
| | ) | |
| Plaintiffs, | ) | Judge Cox |
| v. | ) | |
| ROMEO IUSCO, | ) | |
| MONICA IUSCO, | ) | |
| 3643 ASHLAND, LLC | ) | |
| 3536 NORTH LINCOLN, L.L.C. | ) | |
| 5121 NORTH KENMORE, L.L.C. | ) | |
| 7247 NORTH CLAREMONT, L.L.C., | ) | |
| UNKNOWN OWNERS and | ) | |
| NON RECORD CLAIMANTS. | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT OBJECTING TO
DISCHARGEABILITY OF DEBT**

NOW COMES the Plaintiffs, ALEX JOHNSON ("AJOHNSON"), Individually, as a shareholder of MARQUEE BUILDERS, INC. ("MARQUEE"), ALEX JOHNSON, as Assignee of ANAND SHAH ("ASHAH"), KANTI RAVANI ("KRAVANI"), PHILLIP DESAI ("PDESAI"), and YASHWANT PATEL ("YPATEL"), MUKESH SHARMA, Individually ("MSHARMA"), ANN MATTHEW, Individually

("AMATTHEW"), and MITESH PATEL, Individually ("MAPTEL"), (collectively, "PLAINTIFFS") by and through their attorneys, hereby file this Complaint Objecting to Dischargeability of Debt and in support thereof, state as follows:

## ALLEGATIONS COMMON TO ALL CLAIMS

1. The Individual PLAINTIFFS are individuals residing in the State of Illinois, and/or transacting business in the State of Illinois.

2. MARQUEE was incorporated in the State of Illinois on May 16, 2005 but was involuntarily dissolved by the Secretary of Sate on October 2, 2006 for failure to file an annual report and pay annual franchise taxes. MARQUEE has no management or capital funds. AJOHNSON and MPATEL each held a one-third shareholder interest in MARQUEE at the time of the transactions described herein. Because MARQUEE has no assets, AJOHNSON brings suit, both individually and derivatively as a shareholder of MARQUEE.

3. The IUSCOS (a) are individuals residing in the State of Illinois, (b) transact business in the State of Illinois, (c) own real estate at 8651 Harms Road, Skokie, Illinois, 60077 and (c) reside at 8651 Harms Road, Skokie, Illinois, 60077. On November 5, 2009, the IUSCOS commenced bankruptcy proceedings under chapter 11 of the bankruptcy Code.

4. 3643 LLC is (a) a limited liability company organized under the State of Illinois, (b) transacts business in the State of Illinois, (c) owns real estate at 3643 North Ashland, Chicago, IL 60613 (d) maintains an office at 8651 Harms Road, Skokie, IL 60077, and (e) may be served with process by serving its registered agent, MIUSCO, at 8651 Harms Road, Skokie, IL 60077.

2

5.    3536 LLC is (a) a limited liability company organized under the State of Illinois, (b) transacts business in the State of Illinois, (c) owns real estate at 3536 North Lincoln Avenue, Chicago, Illinois, 60613 (d) maintains an office at 8651 Harms Road, Skokie, Illinois, 60077, and (e) may be served with process by serving its registered agent, MIUSCO, at 8651 Harms Road, Skokie, Illinois, 60077.

6.    5121 LLC is (a) a limited liability company organized under the State of Illinois, (b) transacts business in the State of Illinois, (c) owns real estate at 5121 North Kenmore Avenue, Chicago, Illinois, 60613, (d) maintains an office at 8651 Harms Road, Skokie, Illinois, 60077, and (e) may be served with process by serving its registered agent, MIUSCO, at 8651 Harms Road, Skokie, Illinois, 60077.

7.    7247 LLC is (a) a limited liability company organized under the State of Illinois, (b) transacts business in the State of Illinois, (c) owns real estate at 7247 North Claremont, Chicago, Illinois, 60613, (d) maintains an office at 8651 Harms Road, Skokie, Illinois, 60077, and (e) may be served with process by serving its registered agent, MIUSCO, at 8651 Harms Road, Skokie, Illinois, 60077.

### Jurisdiction and Venue

8.    The District Court, pursuant to 28 U.S.C. § 1334, has original and exclusive jurisdiction over all cases under the Bankruptcy Code, as well as original but not exclusive jurisdiction of all proceedings arising under the Bankruptcy Code, or arising in or related to cases under the Bankruptcy Code.

9.    Pursuant to 28 U.S.C. § 157(a), the District Court may refer to the Bankruptcy Court for the District any and all proceedings and/or cases arising under the Bankruptcy Code.

10. The United States District Court for the Northern District of Illinois has, pursuant to Internal Operating Procedure 15(a), provided for the referral of all bankruptcy cases, and all related adversary proceedings, to the United States Bankruptcy Court for the Northern District of Illinois.

11. Venue is properly placed in this court pursuant to 28 U.S.C. §§ 1391 and 1409.

12. Pursuant to Rule 7004 of the Federal Rules of Bankruptcy Procedure, this Adversary Complaint is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I).

## FACTS

13. In or about December 2004, RIUSCO approached AJOHNSON and MPATEL about whether they would be interested in putting together a group of investors for the purpose of purchasing one or more apartment buildings, subdividing them into condominium units and then selling off the condominium units for a profit (the "VENTURE").

14. AJOHNSON and MPATEL orally agreed to do so in exchange for RIUSCO agreeing to purchase the buildings in the name of their joint VENTURE, splitting the profits from the VENTURE evenly between them and reimbursing the investors the amount of their principal, with interest.

15. RIUSCO, AJOHNSON and MPATEL agreed to name the VENTURE Marquee Builders, Inc ("MARQUEE") and on May 16, 2005, MARQUEE was incorporated in the State of Illinois for the purpose of purchasing the buildings. RIUSOC was named CEO, AJOHNSON was named CFO and MPATEL was named Treasurer. Despite their respective titles, RIUSCO induced MPATEL and AJOHNSON to place

4

their trust and confidence in him and to allow him to assume exclusive control over the financial affairs of MARQUEE.

16. In accordance with their oral agreement, AJOHNSON and MPATEL put together a group of investors with whom RIUSCO, AJOHNSON and MPATEL met to discuss the MARQUEE VENTURE.

17. At these meetings, RIUSCO represented to the investors that he would reimburse the principal amount or their loans, with interest and name each of them a member in the LLC's to which the properties would be deeded, respectively.

18. Bases upon RIUSCO's representations, the following investors loaned the following funds ("Loan Proceeds") to MARQUEE on the following dates for the purpose of MARQUEE purchasing the buildings in MARQUEE'S name, subdividing them into condominium units and then selling off the condominium units for a profit:

| Name | Date | Amount |
|---|---|---|
| YASHWANT PATEL | 6/8/05 | $ 75,000.00 |
| JAYENDRA PATEL | 8/01/05 | $ 30,000.00 |
| PHILLIP DESAI | 7/27/05 | $ 50,000.00 |
| MUKESH SHARMA | 7/22/05 | $100,000.00 |
| ANAND SHAH | 6/09/05 | $ 25,000.00 |
| KANTI RAVANI | 6/09/05 | $ 20,000.00 |
| ANN MATTHEW | 8/02/05 | $ 50,000.00 |
| TOTAL | | $350,000.00 |

19. On or about June 7, 2005, YPATEL entered into a written Promissory Note with MARQUEE, under which YPATEL agreed to loan MARQUEE Seventy-Five Thousand Dollars ($75,000.00) and in return, MARQUEE agreed to repay said amount with interest in the amount of Thirty-Seven Thousand, Five Hundred Dollars ($37,500.00) for a total payment of One Hundred and Twelve Thousand, Five Hundred Dollars ($112,500.00) payable in a single payment to YPATEL on or before November

5

15, 2006. MARQUEE further agreed to use said funds to purchase property for the construction of condominiums, to deed the property to a limited liability company (to be formed), and to name YPATEL a member in said LLC (grant YPATEL an equity interest in the limited liability company). (See a copy of Said Promissory Note, attached hereto and marked as Exhibit "A".)

20.　On or about July 26, 2005, PDESAI entered into a written Promissory Note with MARQUEE, under which PDESAI agreed to loan MARQUEE Fifty Thousand Dollars ($50,000.00) and in return, MARQUEE agreed to repay said amount with interest in the amount of Twenty-Fifty Thousand Dollars ($25,000.00) for a total payment of Seventy-Five Thousand Dollars ($75,000.00) payable in a single payment to PDESAI on or before November 15, 2006. MARQUEE further agreed to use said funds to purchase property for the construction of condominiums, to deed the property to a limited liability company (to be formed) and to name PDESAI member in said LLC (grant PDESAI an equity interest in the limited liability company.) (See a copy of Said Promissory Note, attached hereto and marked as Exhibit "B".)

21.　On or about November 18, 2005, MSHARMA entered into a written Promissory Note with MARQUEE, under which MSHARMA confirmed his July 22, 2005 loan to MARQUEE in the amount of One Hundred Thousand Dollars ($100,000.00) and in return, MARQUEE agreed to repay said amount with interest in the amount of Fifty Thousand Dollars ($50,000.00) for a total payment of One Hundred and Fifty Thousand Dollars ($150,000.00) payable in a single payment to MSHARMA on or before August 1, 2006. MARQUEE further agreed to use said funds to purchase property for the construction of condominiums, to deed the property to a limited liability company

(to be formed), and to name MSHARMA a member in said LLC (grant MSHARMA an equity interest in the limited liability company.) The Promissory Note was personally guaranteed by RIUSCO and MSHARMA held a Mortgage against the condominium project to secure the debt. (See the Promissory Note, attached hereto and marked as Exhibit "C".)

22. On or about August 17, 2005, KRAVANI entered into a written Promissory Note with MARQUEE, under which KRAVANI confirmed his June 9, 2005 loan to MARQUEE in the amount of Twenty Thousand Dollars ($20,000.00) and in return, MARQUEE agreed to repay said amount with interest in the amount of Ten Thousand Dollars ($10,000.00) for a total payment of Thirty Thousand Dollars ($30,000.00) payable in a single payment to KRAVANI on or before November 15, 2006. MARQUEE further agreed to use said funds to purchase property for the construction of condominiums, to deed the property to a limited liability company (to be formed), and to name KRAVANI a member in said LLC. (grant YPATEL an equity interest in the limited liability company). (See a copy of Said Promissory Note, attached hereto and marked as Exhibit "D".)

23. On or about June 9, 2005, ASHAH entered into a written Promissory Note with MARQUEE, under which ASHAH agreed to loan MARQUEE Twenty-Five Thousand Dollars ($25,000.00) and in return, agreed to repay said amount with interest in the amount of Twelve Thousand, Five Hundred Dollars ($12,500.00) for a total payment of Thirty-Seven Thousand, Five Hundred Dollars ($37,500.00) payable in a single payment to ASHA on or before November 15, 2006. MARQUEE further agreed to use said funds to purchase property for the construction of condominiums, to deed the

property to a limited liability company (to be formed), and to name ASHAH a member in said LLC (grant ASHAH an equity interest in the limited liability company.) (See a copy of Said Promissory Note, attached hereto and marked as Exhibit "E".)

24. On or about August 1, 2005, AMATHEW entered into a written Promissory Note with MARQUEE, under which AMATHEW agreed to loan MARQUEE Fifty Thousand Dollars ($50,000.00) and in return, agreed to repay said amount with interest in the amount of Twelve Thousand, Five Hundred Dollars ($12,500.00) for a total payment of Sixty-Two Thousand, Five Hundred Dollars ($62,500.00) payable in a single payment to AMATTHEW on or before August 15, 2006. AMATHEW held a Mortgage against the personal residence of RIUSCO to secure the debt. (See a copy of Said Promissory Note, attached hereto and marked as Exhibit "F".)

25. RIUSCO initially deposited the above Loan Proceeds into a bank account in the name of MARQUEE.

26. In August 2005, RIUSCO started removing the Loan Proceeds from the MARQUEE bank account, without AJOHNSON or MPATEL'S knowledge.

27. RIUSCO never used the loan proceeds to acquire real estate on behalf of the MARQUEE VENTURE.

28. Instead, on information and belief, RIUSCO used the Loan Proceeds, on or about August 3, 2005, to purchase 3641-3643 North Ashland Avenue, Chicago, Illinois, 60613, in his own name.

29. On or around October 5, 2005, RIUSCO transferred the Property to himself and his spouse, MIUSCO, as tenants by the entirety, and on or around June 27, 2007, RIUSCO and MISUSCO transferred the Property to 3643 LLC.

8

30. RIUSCO ultimately completed a condominium subdivision at the Property and began selling off the individual units in a series of transactions beginning in 2007; all as contemplated by the terms of the VENTURE.

31. RUISCO never accounted to AJOHNSON or to MPATEL for each of their one-third profit sharing interest in the VENTURE, nor did he distribute to AJOHNSON or to MPATEL any cash representing distributions on such shares. On information and belief, RUISCO retained the profits for his own use, two-thirds of which were properly due and owing to AJOHNSON and MPATEL ("the Retained Profits").

32. RUISCO also failed to repay the YPATEL, PDESAI, MSHARMA, ASHAH, KRAVANI and AMATTHEW in accordance with the terms of their Loan Agreements.

33. On information and belief, YPATEL, PDESAI, MSHARMA, ASHAH, KRAVANI and AMATTHEW only received Interest payments on their loans; the amount of their Loan Proceeds remains unpaid.

34. Furthermore, RUISCO failed to grant any of these PLAINTIFFS their promised equity interests in 3643 LLC

35. Between September 2005 and October 2005, RIUSCO asked MPATEL to pay a total of Twenty Thousand Dollars ($20,000.00) to three (3) vendors who supplied materials to MARQUEE in exchange for RIUSCO's oral promise to reimburse MPATEL by November 2005. MPATEL orally agreed to do so and made said payments with his personal charge card.

36. On or about September 12, 2006, RIUSCO asked AJOHNSON to loan him Twenty-Five Thousand Dollars ($25,000.00) in order to complete the renovation of

9

the buildings and in exchange, RIUSCO orally promised that he would reimburse AJOHNSON the money on or before October 12, 2006.

37. AJOHNSON agreed to provide RIUSCO with a check in the amount of Twenty-Five Thousand Dollars ($25,000.00) and did so on September 12, 2006.

38. ALEX JOHNSON and MITESH PATEL have received no payment whatsoever with respect to their Loans.

39. On information and belief, the IUSCOS, acting in the capacity of managers of 3643 LLC, transferred funds belonging to 3643 LLC to other LLCS and properties owned and controlled by them. For example, on 2/12/08, they executed a Mortgage in favor of Adelphia Venture Partners, LLC to secure a borrowing by 3643 LLC in the initial amount of Three Hundred Thousand Dollars ($300,000.00). This Mortgage was cosigned by 5121 LLC, another limited liability company owned and controlled by the IUSCOS.

40. On information and belief, the IUSCOS used funds from 3643 LLC to obtain a construction loan for the purpose of improving property owned by them at 3536 LLC.

41. On information and belief, the IUSCOS either purchased or improved the following properties by using the Loan Proceeds and Retained Profits due MPATEL:

| Street Address | P.I.N. |
| --- | --- |
| 5121 N. Kenmore, Chicago, Illinois | 14-08-402-003-0000 |
| 3536 N. Lincoln, Chicago, Illinois | 14-19-404-003-0000 |
| 7247 N. Claremont, Chicago, Illinois | 11-30-319-003-0000 |
| 3643 N. Ashland, Chicago, Illinois | 14-20-119-007-0000 |

10

42. RIUSCO never paid MARQUEE'S annual dues, thereby allowing Marquee to be involuntarily dissolved by the Illinois Secretary of State on October 2, 2006.

43. On or about November 17, 2008, ASHAH, KRAVANI, PDESAI and YPATEL assigned to AJOHNSON all of their rights, title and interest in the Promissory Notes which they entered into with MARQUEE. (See a copy of said Assignments, attached hereto and marked as Group Exhibit "G".)

### COUNT I – 11 USC § 523(a)(2) and (6)

### CONVERSION OF CORPORATE FUNDS
### (MPATEL and AJOHNSON, as SHAREHOLDERS IN MARQUEE v. RIUSCO)

1. MPATEL and AJOHNSON, as SHAREHOLDERS IN MARQUEE restate and reallege paragraphs 1-43 as paragraph 1 of Count I, as though fully set forth herein.

2. Based upon the foregoing, MARQUEE had an absolute, unconditional right to the immediate possession of the Loan Proceeds which AMATTHEW, MSHARMA, YPATEL, PDESAI, ASHAH and KRAVANI invested in MARQUEE.

3. On several occasions, MPATEL and AJOHNSON, as SHAREHOLDERS IN MARQUEE, made demand upon RIUSCO for the return of the loan proceeds to MARQUEE so that the money could be used to purchase property in the name of MARQUEE.

4. Notwithstanding said demands, RIUSCO assumed control, dominion and ownership over the Loan Proceeds by withdrawing said monies from MARQUEE's bank account, without the knowledge of MPATEL and AJOHNSON and then using said monies to purchase real estate in his own name, without any authorization to do so.

WHEREFORE, the Plaintiffs, MPATEL and AJOHNSON, as SHAREHOLDERS in MARQUEE, pray that this Honorable Court enters Judgment in their favor and against the Defendant, RIUSCO, in the amount of Three Hundred Fifty Thousand Dollars ($350,000.00), plus accrued interest, late charges, reasonable attorney fees and costs and for such further relief that this Court deems just and proper.

## COUNT II– 11 USC § 523(a)(2), (4) and (6)
## FRAUD (MSHARMA v. RIUSCO)

1.  MSHARMA restates and realleges the allegations set forth in paragraphs 1 through 43 of Allegations Common to all Counts.

2.  Based upon the foregoing, MSHARMA purchased a security interest in MARQUEE when he loaned MARQUEE One Hundred Thousand Dollars ($100,000.00) on July 22, 2005.

3.  At the time that MSHARMA purchased his security interest in MARQUEE, RIUSCO represented to MSHARMA that the money which MSHARMA invested in MARQUEE would be used by MARQUEE to purchase property for the construction of condominiums, that said property would be deeded to an LLC and that MSHARMA would be named a member in said LLC.

4.  Said misrepresentations were intentionally made by RIUSCO for the purpose of inducing MSHARMA into investing in the MARQUEE VENTURE.

5.  At the time that RIUSCO made said misrepresentations, he knew or, in the exercise of reasonable care, should have known that he had no intention of using the monies which MSHARMA invested in the MARQUEE VENTURE to purchase property in the name of the VENTURE, to name MSHARMA as a member in any LLC to which

the property was deeded or, to repay MSHARMA the principal amount of the loan with interest.

6. At the time that RIUSCO made said misrepresentations, he intentionally omitted mentioning to MSHARMA that he intended to use the monies which MSHARMA loaned to MARQUEE to purchase the Ashland Property in his own name and then to transfer said property to himself and MIUSCO.

7. MSHARMA's reliance on RIUSCO's representations was reasonable in that he was neither given notice nor was otherwise aware of the falsity of said representations and could not have discovered the falsity of same through ordinary prudence.

8. In reliance on RIUSCO's representations, MSHARMA invested substantial sums of money in the MARQUEE VENTURE.

9. But for RIUSCO's fraudulent and untrue representations, MSHARMA would never have invested money in the MARQUEE VENTURE.

WHEREFORE, the Plaintiff, MSHARMA, prays that this Honorable Court enters Judgment in his favor and against the Defendant, RIUSCO, in the amount of One Hundred Thousand Dollars ($100,000.00), plus accrued interest, late charges, attorney fees and cost, punitive damages; grants him an equitable interest in the LLC to which the property purchased with his investment was deeded and for such other and further relief that this Court deems just and proper.

### COUNT III 11 USC § 523(a)(2), (4) and (6)

## FRAUD
## (AMATTHEW v. RIUSCO)

1. AMATTHEW restates and realleges the allegations set forth in paragraphs 1 through 43 of Allegations Common to All Counts.

2. Based upon the foregoing, AMATTHEW purchased a security interest in MARQUEE when she invested Fifty Thousand Dollars ($50,000.00) in MARQUEE on August 2, 2005.

3. At the time that AMATTHEW purchased her security interest in MARQUEE and RIUCSO signed and personally guaranteed the Promissory Note, RIUSCO represented to AMATTHEW that the money which AMATTHEW invested in MARQUEE would be used by MARQUEE to purchase property for the construction of condominiums, that said property would be deeded to an LLC and that AMATTHEW would be named a member in said LLC.

4. Said misrepresentations were intentionally made By RIUSCO for the purpose of inducing AMATTHEW into investing in the MARQUEE VENTURE.

5. At the time that RIUSCO made said misrepresentations, he knew or, in the exercise of reasonable care, should have known that he had no intention of using the monies which AMATTHEW invested in the MARQUEE VENTURE to purchase property in the name of the VENTURE, to name AMATTHEW as a member in any LLC to which the property was deeded or, to repay AMATTHEW the principal amount of the loan with interest.

6. At the time that RIUSCO made said misrepresentations, he intentionally omitted mentioning to AMATTHEW that he intended to use the monies which

AMATTHEW loaned to MARQUEE to purchase the Ashland property in his own name and then to transfer said property to himself and MIUSCO.

7. AMATTHEW's reliance on RIUSCO's representations was reasonable in that he was neither given notice nor was otherwise aware of the falsity of said representations and could not have discovered the falsity of same through ordinary prudence.

8. In reliance on RIUSCO's representations, AMATTHEW invested substantial sums of money in the MARQUEE VENTURE.

9. But for RIUSCO's fraudulent and untrue representations, AMATTHEW would never have invested money in the MARQUEE VENTURE.

WHEREFORE, the Plaintiff, AMATTHEW, prays that this Honorable Court enters Judgment in his favor and against the Defendant, RIUSCO, in the amount of One Hundred Thousand Dollars ($100,000.00), plus accrued interest, late charges, attorney fees and cost, punitive damages and for such other and further relief that this Court deems just and proper.

### COUNT IV 11 USC § 523(a)(2), (4) and (6)
### FRAUD
### ASHAH and KRAVANI v. RIUSCO)

1. AJOHNSON, as Assignee of YPATEL, PDESAI, ASHAH and KRAVANI, restates and realleges the allegations set forth in paragraphs 1 through 43 of Allegations Common to All Counts paragraph 1 of Count IV.

2. Based upon the foregoing, YPATEL, PDESAI, ASHAH and KRAVANI purchased security interests in MARQUEE when they invested their respective sums of money in MARQUEE between 6/8/05 and 7/27/05.

3. At the time that YPATEL, PDESAI, ASHAH and KRAVANI purchased their security interests in MARQUEE and prior to entering their respective Promissory Notes, RIUSCO represented to YPATEL, PDESAI, ASHAH and KRAVANI, that the money which they invested in MARQUEE would be used by MARQUEE to purchase property for the construction of condominiums, that said property would be deeded to an LLC and that they would be named members in said LLC.

4. Said misrepresentations were intentionally made By RIUSCO for the purpose of inducing YPATEL, PDESAI, ASHAH and KRAVANI into investing in the MARQUEE VENTURE.

5. At the time that RIUSCO made said misrepresentations, he knew or, in the exercise of reasonable care, should have known that he had no intention of using the monies which YPATEL, PDESAI, ASHAH and KRAVANI invested in the MARQUEE VENTURE to purchase property in the name of the VENTURE, to name them as members in any LLC to which the property was deeded or, to repay them the principal amount of the loan with interest.

6. At the time that RIUSCO made said misrepresentations, he intentionally omitted mentioning to YPATEL, PDESAI, ASHAH and KRAVANI, that he intended to use the monies which they loaned to MARQUEE to purchase property in his own name and then to transfer the property to himself and MIUSCO.

7. YPATEL, PDESAI, ASHAH and KRAVANI's reliance on RIUSCO's representations was reasonable in that they were neither given notice nor were they otherwise aware of the falsity of said representations and could not have discovered the falsity of same through ordinary prudence.

8. In reliance on RIUSCO's representations, YPATEL, PDESAI, ASHAH and KRAVANI invested substantial sums of money in the MARQUEE VENTURE.

9. But for RIUSCO's fraudulent and untrue representations, YPATEL, PDESAI, ASHAH and KRAVANI, would never have invested money in the MARQUEE VENTURE.

WHEREFORE, the Plaintiff, AJOHNSON, as Assignee of YPATEL, PDESAI, ASHAH and KRAVANI, prays that this Honorable Court enters Judgment in his favor and against the Defendant, RIUSCO, in the total amount of monies due his Assignors, plus accrued interest, late charges, attorney fees and costs and for such other and further relief that this Court deems just and proper.

### COUNT V 11 USC § 523(a)(4)

### BREACH OF FIDUCIARY DUTY
### (MPATEL and AJOHNSON, as SHAREHOLDERS IN MARQUEE v RIUSCO)

MPATEL and AJOHNSON, as Shareholders in MARQUEE, restate and reallege paragraphs 1 THROUGH 43 OF Allegations Common to All Counts paragraph 1 of Count V.

1. Based upon the foregoing, RIUSCO had a duty to deal openly and honestly with MPATEL and AJOHNSON, as co-shareholders, officers and directors in MARQUEE and to exercise the utmost good faith and honesty in all dealings and transactions relating to MARQUEE.

2. As the officer who assumed exclusive control over the financial affairs of MARQUEE, RIUSCO owed a fiduciary duty to MARQUEE, and to MPATEL and AJOHNSON, as co-shareholders in MARQUEE, not to engage in self-dealings.

17

3. RIUSCO breached the above duties by engaging in a self-dealing transaction whereby he withdrew funds of MARQUEE and converted them to his personal use, by purchasing the Property in his own name and not in the name of MARQUEE, by failing to account to AJOHNSON and MAPTEL for their share of the profits from the sale of the condominium units and by not distributing to AJOHNSON and MPATEL any cash representing distributions on such share.

4. RIUSCO also breached the above duties by hindering the ability of the corporation to continue the business for which it was developed.

5. As a direct and proximate result of RIUSCO's breach of his fiduciary duties, MPATEL and AJOHNSON, as Shareholders in MARQUEE, have been damaged in an amount in excess of $350,000.00, plus interest, plus the Retained Profits, in an amount to be proven at trial.

WHEREFORE, the Plaintiffs, MPATEL and AJOHNSON, as Shareholders in MARQUEE, pray that this Court enters Judgment in their favor and against the Defendant, ROMEO IUSOC, as follows:

A. Damages in excess on Three Hundred Fifty Thousand Dollars ($350,000.00).

B. Prejudgment interest pursuant to 815 ILCS 205/2

C. Such other and further relief that this Court deems just and proper.

## COUNT VI 11 USC § 523(a)(4)

### BREACH OF FIDUCIARY DUTY
### (MSHARMA, AMATTHEW, AJOHNSON, as ASSIGNEE OF YPATEL, PDESAI, ASHAH and KRAVANI v RIUSCO)

1. MSHARMA, AMATTHEW, AJOHNSON, as ASSIGNEE OF YPATEL, PDESAI, ASHAH and KRAVANI restate and reallege paragraphs 1 through 43 of Allegations Common to All Counts paragraph 1 of Count VI.

2. Based upon the foregoing, RIUSCO owed a fiduciary duty to MSHARMA, AMATTHEW, AJOHNSON, as ASSIGNEE OF YPATEL, PDESAI, ASHAH and KRAVANI not to engage in self dealings with the loan proceeds which these Plaintiffs invested in MARQUEE.

3. RIUSCO breached his fiduciary duty to these Plaintiffs by using their loan proceeds to purchase the Ashland Property in his own name and by not naming them as members in the LLC to which the Property was deeded, in direct violation of the terms set forth in their respective Promissory Notes.

4. As a direct and proximate result of said breach, MSHARMA, AMATTHEW, AJOHNSON, as ASSIGNEE OF YPATEL, PDESAI, ASHAH and KRAVANI have been damaged in the total amount of their Loan Proceeds, plus accrued interest, plus the value of any equity share that should have been granted them in the LLC to which the Property was deeded.

WHEREFORE, the Plaintiffs, MSHARMA, AMATTHEW, AJOHNSON, as ASSIGNEE OF YPATEL, PDESAI, ASHAH and KRAVANI pray that this Court enters judgment in their favor and against the defendant, RIUSCO, in the total amount of their loan proceeds, plus accrued interest, plus the value of any equity share that should have been granted them in the LLC to which the property was deeded and for such other relief that this Court deems just and proper.

Respectfully submitted,

ALEX JOHNSON, Individually and as a
shareholder of MARQUEE BUILDERS,
INC.
ALEX JOHNSON, as Assignee of ANAND
SHAH, KANTI RAVANI; PHILLIP DESAI and
YASHWANT PATEL, MUKESH SHARMA,
Individually, ANN MATTHEW, Individually.
MITESH PATEL, Individually,

_____
One of Plaintiff's Attorneys

Howard L. Teplinsky -6197501
Ottenheimer Teplinsky Rosenbloom, LLC
750 Lake Cook Road, Suite 140
Buffalo Grove, Il 60089
(847) 520-9400